Control Board Charles Greer. I'm here with Heather Leonard on behalf of Kesia Perry. The circuit has made it clear how important mandates are. In Winn-Dixie v. Dolgan Corp, the circuit said, a district court may not amend, alter, or refuse to apply for a prescription for a prescription for alcohol. A district court cannot apply an appellate court mandate simply because an attorney persuades the court that the decision giving rise to the mandate is wrong, misguided, or unjust. A district court can, of course, wax eloquent about how wrong the appellate court is, but after the waxing wanes, the mandate must be followed. In this case, the court, the 11th Circuit, Judge Rosenbaum sitting on that panel, issued a mandate remanding Kesia Perry's retaliation case to the district court. Two pages of that opinion discusses Ms. Perry's retaliation case occurring from the time she filed her federal court complaint in June of 2011 and the time she was suspended in January of 2012. In the original opinion, the court noted that a number of discrete acts that had happened to Ms. Perry, some counseling, some write-ups, a reprimand, and her suspension, standing alone, were not materially adverse actions or not adverse actions for purposes of retaliation. But then the court turned in these two pages to the retaliation claim that looked at the question of whether the time her supervisor was changed. There was retaliation by increased scrutiny through stepped-up discipline and specifically mentioned in that discussion is her suspension of January 2012. After the opinion was issued in Perry 1, the defendants sought a petition for rehearing and rehearing en banc, pointing out that the opinion was inconsistent internally. That petition was denied, both rehearing and rehearing en banc. The case returned then to the district court, where the defendants filed a motion to basically have the district court reinterpret or interpret the mandate to narrow Kesia Perry's retaliation claim to exclude her suspension because this court had held that her suspension was not a stand-alone act of retaliation. Judge Watkins, considering those arguments and noting that they had already been rejected by the Court of Appeals, said, no, there is nothing inconsistent about this mandate if you understand that there are two ways you can look at retaliation. One is by disaggregating and breaking up the acts and looking at them one by one, and second, it's by looking at them collectively to see whether or not the entire scheme is retaliatory. And based on that, Judge Watkins concluded, I believe properly so, that the case that had been remanded included the transfer to the new supervisor and all of the discipline that he meted out up to her suspension and including her suspension. Then, because of the well-known judicial emergency that was in the Middle District at that time, Judge Sahari from the Northern District of Ohio came down to take over that case and to assist in the emergency. At that point, the defendants, again with new ears, began to argue that Plaintiff's case should be restricted and that Plaintiff should not be permitted to go into her suspension, her counselings. The only issue that could be covered in the trial was the transfer of her from one supervisor to another. You can tell us whatever you want, but I thought your challenge here was to the jury instructions that were given by the district court. Tell us what's wrong with the jury instructions and why the jury instructions didn't follow the mandate of the first Perry case. Certainly, because the jury instructions flow from the district court's decision to narrowly interpret. Tell us specifically what's wrong with the jury instructions. Specifically, the jury instruction that ended up being given was that the jury was told they may not base their decision as to whether there was retaliation upon the suspension that happened in January in 2012 or based upon what the judge, the last day of the trial, called non-disciplinary counseling. By removing essentially the counseling and the suspension, there's really nothing left. I understood the instruction to mean that you can't return a verdict on the basis that in isolation a suspension was the adverse action or in isolation the counselings were adverse actions. Rather, what you need to consider is whether the close supervision, which could have been the adverse action, resulted in the suspensions or the counselings or whatever else there may have been when there would not have been these kinds of things had there not been the close supervision. That's what I understood this instruction to articulate. Right, and that's what it says. You can only look at that, but that's not consistent with the language of the opinion in Perry 1. Why not? Because Perry 1 talks about subsequent close monitoring and disciplinary decisions. And when it talks about what her claim is, it always includes disciplinary decisions and then specifically says that her suspension is one of those subsequent disciplinary decisions. Right, meaning that had she not been closely supervised, the argument would be that she would not have been subjected to these disciplinary proceedings. Right. That others who were not closely supervised, who engaged in the same or similar behavior, would not have been disciplined because they were not being closely supervised. Yes, the comparative question. There's no necessity for comparative evidence. I understand, but in an effort to explain. And so that would be fine, except when you look at the jury instruction along with what the court prohibited Ms. Perry's counsel from arguing, counsel was prohibited from arguing the suspension. They were allowed to mention the suspension but could not argue that the suspension or the counselings were retaliatory acts. And talking about a non-disciplinary counseling is a whole separate problem because counseling in and of itself, when it's happening, you don't know whether it's going to be disciplinary until something later happens. And so, you know, there have been some cases from the circuit that talked about counseling is not an adverse action. They're all looking backwards retrospectively at the facts of those cases. As a matter of law, I don't think you can tell until you see the context in which the counseling is put. And that's what made the jury instructions and the narrow interpretation of the mandate so problematic for plaintiffs here. Because when they're all said and done, all you can say is, well, they moved me to another supervisor who supervised me. And how is a jury supposed to understand that in light of having heard about a suspension, having heard about counselings, but I'm not allowed to argue they're part of the retaliation? Were you not allowed to argue that the counselings and the suspension would not have happened but for the close supervision? As I read the directions that the judge gave to plaintiff's counsel right before closing argument and questions are asked, we need to know what can we do about the suspension. Judge Zahari says, it's a fact. You can mention that it occurred, but you may not rely upon it to support your retaliation claim. So what do you do with that? The example I have been thinking of, it's personal, for the last two weeks, I make an omelet, I make an avocado pesto omelet for my wife every Saturday morning. And she looks forward to it and I look forward to it. Now I'm looking forward to it. Two weeks ago, I went to make it and my son had stopped by and taken the eggs and there were no eggs. And when I asked him, he said, well, you've got the avocado and the pesto. I mean, what's the problem? Well, we go back to make an avocado omelet here and we're told, well, you can refer to the eggs, you can see the eggs, you can show the jury the eggs, but you're not allowed to use the eggs, but go ahead and make an omelet. That this court, when it sent this case back and wrote the two pages that it did in the Perry one opinion, meant something. And I think what it meant was that there's two ways to look at retaliation. You can look at discrete acts, one at a time, or you can look at them collectively. And collectively, all those acts together can be ratcheting up discipline to lead to a suspension. And that's what the testimony was. It was available that after she is suspended and she quits, comments made, wow, you got her to do what we couldn't get her to do, or you really put it on and got her to leave. All that is there, but you can't make those arguments if you can't really explain to the jury how the retaliation ratcheted up. You can sort of say, yeah, it's over there, but you're not allowed to consider it. You may not make it a basis of your opinion. Well, and on the counseling front, looking at our earlier opinion in Perry one, it says, this counseling cannot support a claim for retaliation, however, because it does not constitute a materially adverse action. So how, just pulling, let's just look at the counseling piece for just a second. And then the district court, when the mandate goes back, the jury instruction says, I instruct you as a matter of law that the following are not adverse employment actions, non-disciplinary counselings. So how is that not, on the counseling issue alone, how is that not in keeping with the mandate? Well, if you're looking solely at the counseling and if plaintiff's argument had been the counseling is retaliatory, we would say, that's right. We cannot make that standalone counseling claim. But then the court goes on to what I have is page 24 and 25 of the opinion where it says, finally, the placement under Knight's supervision and his subsequent close monitoring and disciplinary decisions constituted an act of retaliation. Talks about how he's instructed to keep a close watch on her, use progressive discipline if necessary. And it is taking the facts in the light most favorable to Perry. We find that a genuine issue of material fact exists as to whether ABC retaliated against Perry after she filed her lawsuit. Based on the close temporal proximity between the filing of Perry's complaint and the subsequent disciplinary activity. Well, that subsequent disciplinary activity are write-ups, counseling, suspension. That Adrian could include Perry. She would not have been closely watched and then disciplined by Knight in the absence of a protected activity. So admittedly, there is some tension here. But as lawyers, we're taught to think about two contrary things at the same time and reconcile them. And under Title VII law, there's nothing irreconcilable here. The district judge got it wrong, misapplied the mandate, and this case should be reversed and sent back. Thank you, Mr. Greer. You've reserved two minutes for rebuttal. We'll hear from Ms. Walz. May it please the Court, Counsel. Responding to the focus of the appellant's argument on the jury instructions. The law directs us to consider as a whole all of the instructions that the judge gave to the jury. Starting with his opening instruction, he advised them that for the second element of the retaliation claim, which is the adverse employment action that is what has been the focus here. For the second element, you must decide whether the transfer to Knight's supervision resulted in abnormal monitoring or discipline. And if so, whether that was an adverse employment action. After the presentation of the evidence, he continued to instruct them. Every time he repeatedly referred to what he had made a defined term, the employment, the adverse action, excuse me, or the action, he was referring collectively to the change in supervision, the change in supervision, the scrutiny, and the discipline. And telling the jury that all of that collectively. The line that the appellant focuses on was Judge Zuhari's attempt to keep the jury from finding that the adverse employment action was a standalone retaliation claim based upon the suspension itself. And the way that, in addition to looking at his instructions where he never said you can't consider the suspension as discipline and scrutiny, he only said it can't form the basis. He didn't say even it can't be a basis. He said the basis. Because to do otherwise would contravene the parts of Perry 1 where two things were said about the suspension. One, that it had not been raised below and was not before the court as a basis for ruling. And two, in the alternative, even if it had been raised, it was not temporally proximate and there was nothing else in the record to connect that suspension back to her filing of the complaint seven months earlier. So, it's interesting too because even after he had given the entire written out charge, which he sent back to the jury room with the jury, he returned again while Ms. Haynes was setting up to do her closing and reminded them again that when he was, he continued to instruct them that whenever he said actions in bold or in quotes, like on page 10, which is where he's discussing element two, that refers to the assigning of the plaintiff to a new supervisor, in this case, Andy Knight, who allegedly unfairly scrutinized and disciplined her. He's not unpacking those things from each other. He's telling them every time he addresses the jury, it's that collective item that they should consider. In that sense, it is consistent with the mandate of the Perry 1 case, even as argued by the appellant here. And in the reply brief that the appellant submitted, they posit that the instruction to the jury should have been as a matter of law, that the written reprimand for insubordination and attendance and the 2012 suspension were adverse employment actions. To do that would be to wholly ignore the earlier discussion in the Perry 1 case and to ignore the fact that the April 2011 reprimand for insubordination and attendance issues was given by Stan Goolsbee prior, two months prior to the filing of the lawsuit, three months prior to the assignment of Ms. Perry to Mr. Knight's supervision. Importantly, in addition to the instructions, if the court looks at the evidence that the jury had and the testimony, Judge Zuhari allowed testimony in from both Knight and Goolsbee about the entire time of the supervision of Keisha Perry under Knight, including the acts of the suspension, anything that happened during that period, counseling or not, the jury heard that testimony and received those exhibits in evidence and had them back in the room with them. So they had the basis in the plaintiff's opening argument to the jury. They were allowed to argue that anything that happened under Knight's supervision was scrutiny and discipline. That was what he was doing to punish her for her lawsuit. And they could have argued that in the closing. What Judge Zuhari did not want them doing in the closing was arguing that the suspension in and of itself satisfied the second element of the retaliation claim. And I realize the court didn't have any questions on the appellant's other arguments. Do you want me to address them at all? It's your time and you can do what you'd like. Okay. I think I'll rest on the briefs for those points, Your Honor. Thank you. Thank you, Ms. Wells. Mr. Greer. Yes, Your Honor. With regard to the jury instruction question, document 266 at 87, I think that's a transcript. The district court instructed Perry's counsel that she may mention the fact of the suspension, but may not make the argument that it is part of the retaliation. It cannot be mentioned in the context of retaliation. And he'll be instructing the jury that it cannot be the basis for their verdict. The verdict form that the court sent to the jury had a paragraph where it asked them to identify the adverse employment action or actions that plaintiff had proved, thereby inviting them to disaggregate the actions when, I think under the mandate, it was clear Perry had to show that this entire period of supervision and discipline was a materially adverse action collectively. And that was the obligation we had, and she was denied the opportunity to do that. And then I'd just like to point out how this played out during closing argument. And if you read through the plaintiff's closing argument at Volume 4, I think starts at Route 82, you can see the plaintiff's attorney is struggling to try and figure out what is it you can tell the jury was the adverse action. But when you get to the defendant's argument, Volume 4 at 84 or 85, defendant says, the judge has told you that counselings aren't adverse actions, so counselings aren't out. Page 85, informal counseling. Well, if formal counseling is not adverse, neither is informal counseling adverse. Performance evaluations are not disciplined. They're like a report card. You have the judge's instruction that the January suspension, this is not something you can consider as an adverse employment action. It's not something you can base your verdict on. So what's out? What's left? And that was clearly the plan is to get the district court to abandon the mandate, disaggregate the claims, and demonstrate that there is nothing there. Highlighted ultimately by the fact that, as we briefed, violating the motion in limine, they make reference to Ms. Perry's comment that, quote, this lawsuit is bullshit. And the district court did not let Perry go in and demonstrate why at least the claim she was trying had been reversed. District court had been reversed and remanded, and that claim did have merit. On that, again, we rest on our briefs, and thank you for your time. Thank you. We'll be in recess. All rise.